H. F. BAILEY AND LUCY C. BAILEY, HIS WIFE, *Appellants,*
v. S. A. HUTCHINS, *Appellee.*

En Banc.

Decision Filed June 11, 1925.

An Appeal from the Circuit Court for Orange County;
C. O. Andrews, Judge.

*C. E. Lemire,* for Appellants;

*Chas. P. Dickinson,* for Appellee.

PER CURIAM.—This cause having heretofore been submitted to the Court upon the transcript of the record of the decree herein, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said decree; it is, therefore, considered, ordered and decreed by the Court that the said decree of the Circuit Court be, and the same is hereby, affirmed.

WEST, C. J., AND WHITFIELD, TERRELL AND STRUM, J. J., concur.

ELLIS, J., dissents.

ELLIS, J., dissenting.

This is a suit to enforce a vendee's lien upon certain land in Orange County. It is not a suit to enforce a lien under Section 3498, Revised General Statutes, in favor of any person performing by himself or others any labor upon any farm, orchard or grove.

The amended bill alleges in substance that the appellee, Hutchins, held in July, 1921, a mortgage upon the land described in the sum of sixteen hundred and fifty dollars. The mortgage was given to secure the payment of three promissory notes; one due in March, 1921, for seven hundred and fifty dollars and two others for four hundred and fifty dollars each, due, respectively, August 30, 1921, and August 30, 1922. That H. F. Bailey, one of the appellants, became the purchaser of the property in July, 1921, from F. B. Lynch, the mortgagor.

It is alleged that two of the notes were then "long past due." It is alleged that about the "middle of July, 1921," Bailey "entered into a parol agreement with the said complainant" that if the latter would satisfy the mortgage Bailey would convey the land to the complainant. It is alleged that pursuant to that agreement Bailey "turned over the possession of said property" to the complainant. The bill then recites that the property "having an orange grove on same" the complainant "entered into possession of said property and did perform certain labor and expended for labor and work on said property and for fertilizer for same in all the sum of Three Hundred Thirty-six (336.00) Dollars." That in March, 1922, Bailey refused to "carry out said agreement to deed said property to this complainant."

It is alleged that "said matter was permitted to remain in status quo under said agreement and that said work and labor was done and performed on numerous days and dates from September 1st, 1921, to late in February, 1922," and that in March, 1922, the "complainant notified the said Bailey that he was ready to take up said notes, satisfy said mortgage and deliver said notes to said defendant and receive deed for said property, but that the said defendant Bailey then and there refused to carry out said agreement,"

up to which time the complainant had no notice that Bailey did not intend to carry out the agreement.

The prayer of the bill is that Bailey be required to pay the amount expended by the complainant and in default thereof that the property be sold and the proceeds applied to the payment of such sum.

The suit was commenced in April, 1922.

The answer denies that the complainant held the notes and mortgage in July, 1921; avers that they had been indorsed, transferred and assigned to the Bank of Orange & Trust Company by the complainant and that the complainant did not then in July, 1921, nor at any time subsequent thereto hold or have possession of them. It denies that Bailey had any knowledge of the complainant's entering into possession of the property and denied that Bailey delivered possession to the complainant. It denied that Bailey refused to carry out the agreement to convey the land to complainant, but averred that his failure to do so was due to the complainant's failure to cancel the notes and mortgage as he agreed to do.

In the answer to the amended bill the defendants claimed all benefits to which they were entitled under their answer to the original bill. That answer contained a demurrer to the bill for want of equity. It is insisted that the alleged agreement did not authorize the complainant to make the alleged improvements upon the land pending the conclusion of the agreement. That it is not alleged that the improvements were of any value either to the estate or to the defendants; that the bill failed to show compliance by the complainant with the agreement on his part to be performed; that it does not allege that the complainant has ever surrendered possession of the property to the defendants nor that its value has enhanced by reason of such alleged improvements.

There was a decree in favor of the complainant and the defendants appealed.

The evidence in the case is conflicting as to the terms of the alleged parol agreement. But the fact seems to be well established that an agreement in parol was made between the complainant and defendant that the latter would convey the land to the former if he would cancel and discharge the notes and mortgage and deliver them to the defendant. That when this agreement was made the complainant was unable to carry out his part of it because he had hypothecated the notes at the bank and was unable to obtain them. That the defendant tendered a conveyance of the land duly executed very soon after the agreement was made but the complainant could not carry out his part of the contract. That several times afterwards the defendant sought a conclusion of the agreement but the complainant could not comply with its terms on his part to be performed. The defendant finally, in April, 1922, himself paid the notes and mortgage after the complainant had begun a suit to foreclose the same.

As to the evidence by which the allegation of the sum expended for work done on the land was intended to be supported it cannot be said that it is free from suspicion of errors and inaccuracies. It consists mainly of a negro's statements as to the work actually done and the money paid therefor, supplemented by a memorandum, or account book, in his own handwriting, without dates as to year, the entries in which were not made at the time the work was actually done and money spent but some time afterward, usually at the week end. In one of these entries work appears to have been done on October 23rd and 30th, which in the year 1921 came on Sunday.

If the alleged agreement may be considered as a contract for the sale of the real estate and compensation is sought by the purchaser for the improvements made thereon the

amount to be allowed should be based upon the actual value of the improvements or at farthest upon a reasonable allowance and not upon the amount expended. See Glinski v. Zewadski, 8 Fla. 405.

In the case of Lewis v. Yale, 4 Fla. 418, the Supreme Court, speaking through Mr. Justice Thompson, said that it was not within the jurisdiction of a court of equity to award compensation in damages for the injury sustained by the non-performance of a contract in the event of the primary relief for a specific performance of the contract failing.

In the case at bar there is no prayer for a specific performance of the alleged contract. In the case of Glinski v. Zewadski, *supra,* the court reaffirmed the general doctrine announced in the Lewis-Yale case, *supra,* but said that there are exceptional cases where a clear equity is found to have arisen between the parties growing out of the peculiar character or nature of the contract. In such cases the chancellor may retain the bill for the purpose of having that equity properly adjusted. And in that case the rule was announced that compensation was allowable only for the actual value of the improvements or at farthest a reasonable allowance therefor. The court said that it would be unjust to visit upon one party the improvidence of another who may have been extravagant in the expenditure of money upon so-called improvements.

The reason seems to be peculiarly applicable in this case where the plowing and harrowing of a ten-acre tract of land was seemingly left to the discretion of a negro laborer with the result that a bill amounting to about thirty-three dollars per acre is run up as a charge against the defendant without any evidence as to the actual value resulting to the place from such activities.

But the complainant does not seek specific performance of the contract. That is not the basis upon which he invokes

the power of the chancery court. He rests his prayer for relief upon the assertion of the existence of a vendee's lien and seeks to enforce it.

But there are none of the elements of a vendee's lien existent in this case according to the bill or the evidence. It was no part of the transaction that the vendee would obligate himself to improve the property for any purpose of benefit to the vendor, therefore, there was no privity of contract between them as to such expenditures. There has been no such part performance of the contract that its rescission would be a fraud upon the complainant. There has been no payment of the price in whole or in part nor is there any allegation of proof of tender. Nor is the proof of the contract clear, definite and conclusive as to the time within which the defendant was to be relieved of liability on the notes and mortgage, nor has the complainant offered to reimburse the defendant for the principal and interest due upon those obligations, but, upon the other hand, the complainant began a suit to foreclose the mortgage.

The complainant was in default from the date of the alleged agreement. For several months he failed to comply with his contract to cancel the notes and mortgage and relieve the defendant from such obligations. On account of his own laches and disregard of his obligation the complainant gave the defendant cause for rescinding the agreement, but the complainant even then did not pay the notes and mortgage and tender them to the defendant, but commenced his suit to foreclose.

In Lytle v. Scottish American Mortgage Co., 122 Ga. 458, 50 S. E. Rep. 402, the court said: "Where the vendee makes default, he can not take advantage of his own wrong so as to give himself a standing as plaintiff in an action to recover for improvements or purchase-money paid in part performance of the contract of sale. Such claim can only be

asserted defensively, where the vendor by exercising the right of rescission has clothed the vendee with the correlative right to be restored to his status.'' And in this State the doctrine obtains that compensation will not be allowed a vendee for improvements where by disregarding his obligations he has put himself in default. See Chabot v. Winter Park Co., 34 Fla. 258, 15 South. Rep. 756, 43 Am. St. Rep. 192.

I think the decree of the Chancellor should be reversed with directions to dismiss the bill.